# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT H. OUTMAN, CDCR No. P-79939,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL PARAMO, Warden; S. SANCHEZ, Captain; WILLIAMS, Correctional Counselor; C. YORK, CCI; M. VILLATUERLE, CCII; B. VOGEL, CCI, B. OLIVARRIA, Appeals Coordinator; B. SELF, Appeals Coordinator; K. RODRIGUEZ, Psychologist; and S. BAHRO, Ph. D Psychologist,<br><br>Defendants. | Case No.: 18cv2101-BAS(KSC)<br><br>**REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 22.] |

Plaintiff Robert H. Outman, proceeding *pro se* and currently incarcerated at the California Health Care Facility in Stockton, California, filed this civil rights action pursuant to 42 U.S.C. § 1983 in the Eastern District of California on August 27, 2018. [Doc. No. 1.] The case was later transferred to this Court. [Doc. No. 7.]

Before the Court is a Motion to Dismiss the Complaint by defendants Vogel, Olivarria, Bahro, Searles (formerly Sanchez), Rodriguez, Self, Paramo, Villafuerte, and

1

18cv2101-BAS(KSC)

York [Doc. No. 22];[1] plaintiff's Opposition to defendants' Motion to Dismiss [Doc. No. 29]; and defendants' Reply to plaintiff's Opposition [Doc. No. 31]. For the reasons outlined below, IT IS RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss as to all defendants and causes of action with leave to amend.

## *Background*

Plaintiff claims that prison officials at Richard J. Donovan Correctional Facility ("RJD") were deliberately indifferent when they failed to follow doctors' recommendations excluding him from dormitory housing and to provide him with fair process to challenge decisions by prison officials to clear him for dormitory housing. [Doc. No. 1, at pp. 1, 25.] The Complaint alleges plaintiff was diagnosed and treated in a psychiatric hospital for Post-Traumatic Stress Disorder (PTSD) after he sustained gunshot wounds to his left hip and right elbow during a work-related incident. He was later incarcerated for a criminal offense. [Doc. No. 1, at pp. 1, 4.] While incarcerated at Mule Creek in 2008, plaintiff claims he suffered a heart attack and was then ordered into dormitory housing "against recommendations of [a] psychologist." [Doc. No. 1, at p. 4.] Thereafter, the Warden issued a letter excluding plaintiff from "dorm-type housing" based on a doctor's recommendation. [Doc. No. 1, at p. 5.] Plaintiff had another heart attack in July 2016 and was prescribed with a wheelchair because of heart disease and other health issues. He remained "cell housed" at Mule Creek until August 2016, but he was then

---

[1] Defendants Williams and Villafuerte have not been served with the Complaint. [Doc. No. 22-1, at p. 16.] In his Complaint, plaintiff misspelled defendant Villafuerte's name as Villatuerle. On the caption of defendants' Motion to Dismiss, defendant Williams **is not** listed as one of the defendants bringing the Motion; defendant Villafuerte *is* listed as one of the defendants bringing the Motion. Both defendants Williams and Villafuerte are mentioned in the body of the Motion, so the Court will assume that defense counsel intended to include these defendants as parties to the Motion to Dismiss even though they have not been served.

2

transferred to the RJD, because Mule Creek is "not wheelchair compatible." [Doc. No. 1, at p. 5.] RJD was able to accommodate plaintiff's need for cell housing and wheelchair compatibility. [Doc. No. 1, at p. 5.]

***Dormitory Exclusion Documents from Mule Creek***. In support of his assertion he was medically excluded from dormitory housing at Mule Creek, plaintiff attached several documents as exhibits to his Complaint:

(1) A letter signed by Melvin Macomber, Ph.D., on September 1, 2008 concluding based on his evaluation and psychological testing that a dormitory setting would not be appropriate for plaintiff because of his serious physical limitations (*i.e.*, a prosthetic hip and a crippled arm from his involvement in a shooting incident while he was a deputy sheriff) and because "he has a serious case of PTSD from this shooting." [Doc. No. 1, at p. 33.] According to Dr. Macomber, plaintiff cannot cope with noise, crowds, or confusion. As a result, he will not go to the dining hall for his meals and lives on food purchased from the canteen. It was Dr. Macomber's opinion that plaintiff would be unable to tolerate the noise and confusion of a dormitory setting as he would be unable to sleep, would become severely anxious, and "would become a psychological and medical liability (he has high blood pressure)." [Doc. No. 1, at p. 33.]

(2) A report signed on December 4, 2015 from Wendy S. Weiss, Ph.D., Forensic Psychologist, Board of Parole Hearings/Forensic Assessment Division, California Department of Corrections and Rehabilitation ("CDCR"). This report states that plaintiff has ongoing symptoms that meet the criteria for post-traumatic stress disorder. The symptoms include avoidance of large crowds and a startle response to various stimuli, including the sound of gunshots and radios. [Doc. No. 1, at pp. 35-36.]

(3) A letter written by Dr. Macomber on January 20, 2016 and addressed to Associate Warden D. Lory. In this letter, Dr. Macomber states that he has known plaintiff since 2008, when he was moved to a dormitory setting "which resulted in serious trauma and impaired health." [Doc. No. 1, at p. 34.] Because of the serious physical injuries mentioned in his prior letter, Dr. Macomber stated plaintiff would be unable "to crawl into

3

the confined space of a dormitory bunk." [Doc. No. 1, at p. 34.] In addition, Dr. Macomber stated plaintiff has PTSD and "experiences panic attacks when he is around crowds, noise, radio static sounds, and disturbances that occur regularly in the dormitory setting." [Doc. No. 1, at p. 34.] Dr. Macomber therefore stated as follows: "To move [plaintiff] into a dormitory at his age and impaired health would be in his case fatal in my opinion." [Doc. No. 1, at p. 34.]

(4) A CDCR form entitled Mental Health Interdisciplinary Treatment Team, Housing/Program Recommendation. The form was signed on March 3, 2016, by several individuals, including a psychiatrist, a team leader, and the Chief of Mental Health. [Doc. No. 1, at p. 31.] The following is handwritten on the form: "Dorm exclusion based on 1/20/16 letter written to [Associate Warden] D. Lory by M. Macomber, Ph.D." [Doc. No. 1, at p. 31.]

***First Classification Hearing at RJD***. On November 30, 2016, after plaintiff was transferred to RJD, he was called to a Unit Classification Committee hearing. Defendant Sanchez, a captain, chaired the hearing, and defendant Vogel attended. Plaintiff claims he attempted to introduce his documents showing he should be excluded from dormitory housing but was told his documentation was "of no value," and he would be transferred to dormitory housing. [Doc. No. 1, at p. 6.]

Plaintiff attached the "Classification Committee Chrono" from the November 30, 2016 hearing to his Complaint. [Doc. No. 1, at pp. 38-39.] This form states plaintiff said he did not wish to transfer to "RJD Facility E," because he does not want to be housed in a dormitory setting. Plaintiff explained that he suffers from PTSD and "dorm living makes his condition worse." [Doc. No. 1, at p. 38.] However, the form states he was cleared for "dorm and double cell living." [Doc. No. 1, at p. 38.]

After the Classification Committee's recommendation was made, plaintiff challenged the recommendation by pursuing a CDCR 602 inmate appeal. The Complaint alleges plaintiff encountered many obstacles and delays in pursuing his CDCR 602 appeal. [Doc. No. 1, at pp. 6-11.] For example, an exhibit to the Complaint indicates this appeal

4

was rejected at the first level on March 1, 2017, because plaintiff did not submit "necessary supporting documents" (*i.e.*, "a copy of [the] UCC Action dated 11/30/16, with auditor action"). However, plaintiff alleges his attempts to obtain a copy of these supportings documents were "ignored" and/or delayed. [Doc. No. 1, at pp. 6-8, 58.]

Plaintiff also challenged the Classification Committee's recommendation by sending correspondence to RJD's warden, defendant Paramo, and to RJD's Mental Health Department. [Doc. No. 1, at p. 6-7, 47, 48, 52.] On December 4, 2016, plaintiff completed a form requesting mental health care services. [Doc. No. 1, at pp. 6, 46.] He then had a consultation on December 9, 2016 with E. Rodriguez, who agreed that plaintiff should not be placed in dormitory housing based on the recommendations from Mule Creek. However, E. Rodriguez told plaintiff that he did not have the authority to "generate a chrono" to this effect. E. Rodriquez did agree to make a telephone call to defendant Williams about the matter and advised plaintiff to show his documentary evidence to defendant Williams.[2] [Doc. No. 1, at p. 50.]

On December 11, 2016, plaintiff had a second consultation with E. Rodriguez, who reported to plaintiff that he had a telephone conversation with Dr. Sato from RJD Mental Health, but Dr. Sato indicated plaintiff's documents were "of no value" because they came from a different facility (*i.e.*, Mule Creek). The form indicates that E. Rodriguez told plaintiff he would not be given a dormitory housing exclusion, but he could submit a CDCR 602 inmate appeal in the event he was placed in dormitory housing and did not like the placement. [Doc. No. 1, at p. 51.]

In a letter dated December 28, 2016, defendant Paramo (warden) responded to plaintiff's correspondence of December 6, 2016. [Doc. No. 1, at pp. 6, 8.] A copy of this letter is attached to the Complaint as an exhibit. [Doc. No. 1, at pp. 56-67.] Defendant

---

[2] The Complaint refers to two different individuals with the last name of Rodriguez. E. Rodriguez is not a named defendant. K. Rodriguez, an RJD staff psychologist, is a named defendant, and the allegations against her are addressed below.
5
18cv2101-BAS(KSC)

Paramo's letter explains that the November 30, 2016 Classification Committee recommended plaintiff "be *retained* at [RJD], Facility B, and for [his] case to be referred to [RJD's] Mental Health Department for evaluation with regards to Dormitory Housing." [Doc. No. 1, at p. 56 (emphasis added).] Defendant Paramo's letter further states that plaintiff's "transfer is under review and [his] case will be returned to the assigned counselor, pending mental health evaluation and/or for further action." [Doc. No. 1, at p. 56.] In addition, defendant Paramo's letter states that the Classification Committee's recommendations would be reviewed by the Classification and Parole Representative (C&PR), who would "make the final determination" as to where plaintiff could be housed based on the facts and circumstances of his case. [Doc. No. 1, at p. 56.]

On March 1, 2017, plaintiff's CDCR 602 inmate appeal was rejected for failure to submit supporting documents, so plaintiff addressed a CDCR 22 request to defendant York on March 4, 2017, asking for a copy of the "UCC ACTION DATED 11/30/16, with auditor action." [Doc. No. 1, at p. 59.] Plaintiff made a second CDCR 22 request to defendant York on March 13, 2017. [Doc. No. 1, at p. 65.] Since he had not received a response, plaintiff sent a CDCR 22 request entitled "unanswered CDCR 22's" to York's supervisor on March 21, 2017. [Doc. No. 1, at p. 67.]

Next, defendant York provided a response dated March 28, 2017, which states "see attached." [Doc. No. 1, at p. 64.] However, it appears the attachment was only a copy of the November 30, 2016 Classification Committee Chrono without the requested documentation about any "auditor action." [Doc. No. 1, at pp. 64-66.] A second "staff response" to plaintiff's March 4, 2017 CDCR request is dated April 20, 2017, and it states as follows: "Your case was finalized and *you will not be referred for transfer at this time. No auditor action took place.*" [Doc. No. 1, at p. 59 (emphasis added).] Finally, plaintiff received a response to his March 21, 2017 CDCR 22 addressed to defendant York's supervisor informing him that his concerns had been addressed. [Doc. No. 1, at pp. 10, 67.]

///

***Second Classification Hearing at RJD***. On November 1, 2017, the Complaint alleges plaintiff was "summoned" to a second Classification Committee hearing, which was attended by defendant Searles (formerly Sanchez) and defendant York. Plaintiff claims he gave these defendants copies of his Petition for Clarification and Due Diligence, dated October 25, 2017. In his Petition, plaintiff objected to any transfer to dormitory housing based on prior findings and recommendations indicating dormitory housing is "toxic" to plaintiff's health because of his advanced age and declining health. [Doc. No. 1, at pp. 10-11, 63.] Plaintiff does not believe his Petition was considered. Instead, defendant York read from a prepared statement indicating plaintiff had been cleared for dormitory housing by defendant K. Rodriguez. Thereafter, plaintiff alleges he was "rudely dismissed" and told he would be going to dormitory housing. [Doc. No. 1, at p. 11.]

The exhibits attached to the Complaint include a copy of the Classification Committee Chrono from the November 1, 2017 hearing. [Doc. No. 1, at pp. 83-84.] This document states plaintiff was cleared for dormitory housing based on the recommendation of defendant K. Rodriguez, a staff psychologist, but it also states that plaintiff would be scheduled for another evaluation to determine the need for placement into the "CCCMS program as a result of his PTSD and occasional panic attacks." [Doc. No. 1, at p. 83.] In addition, this document states plaintiff expressed an interest in being transferred back to Mule Creek or another facility in northern California, because he has family ties there. Because of plaintiff's concerns about dormitory living, and other case factors, such as his status as "High Risk Medical," the Committee recommended a transfer to Mule Creek or another appropriate facility in northern California "in an effort to facilitate family ties." [Doc. No. 1, at p. 84.]

Plaintiff also challenged the Classification Committee's November 1, 2017 recommendation by addressing CDCR 22 interview requests to defendant K. Rodriguez. On February 1, 2017, plaintiff had an appointment with defendant K. Rodriguez about his request for a "dormitory living exclusion chrono." [Doc. No. 1, at pp. 9, 60.] Treatment notes for this appointment are attached to the Complaint as an exhibit. [Doc. No. 1, at

7

p. 60.] The allegations in the Complaint and the treatment notes indicate that plaintiff presented copies of several documents to support his request for a dormitory housing exclusion, but defendant K. Rodriguez advised plaintiff that mental health providers do not make housing recommendations. In addition, the notes clarify that the Mental Health Department has cleared plaintiff for dormitory living, and he is not a participant in the mental health program, but he will be "scheduled for an evaluation to determine need for transfer to the CCCMS-LOC program." [Doc. No. 1, at p. 60.]

The next day, February 2, 2017, plaintiff addressed a CDCR 22 to defendant K. Rodriguez because he was not satisfied with the information he was given during his appointment. Dr. Bahro responded as follows on March 8, 2017: "Continue to address your issue of [mental health] symptoms and concerns with your clinician as [K. Rodriguez] suggested so that she can assist you." [Doc. No. 1, at p. 61.] Plaintiff alleges this response was part of a "continuing pattern of indifference." [Doc. No. 1, at p. 9.]

Thereafter, plaintiff continued to submit CDCR 22 requests disputing the Classification Committee's November 1, 2017 recommendations, requesting copies of documents and a rehearing, and complaining that staff members were "stalling the process" of his 602 appeal and refusing to answer his CDCR 22 requests. [Doc. No. 1, at pp. 10-13, 62, 73-74, 77-79, 80-82.]

**_Subsequent Transfers to Other Facilities_**. On December 17, 2017, plaintiff was transferred to the Substance Abuse Treatment Facility ("SATF") in Corcoran, California. Shortly after his arrival at SATF, plaintiff was interviewed and evaluated by a physician, who determined he would be better situated in an "[outpatient housing unit] instead of a dorm environment because he [was] feeling fearful/unsafe and is wheelchair dependent with multiple co-morbidities." [Doc. No. 1, at pp. 13-14, 86.]

On December 25, 2017, psychologist notes state plaintiff was in the [mental health] level of care and "should be evaluated for an [outpatient housing unit] due to his complex medical problems." [Doc. No. 1, at p. 95.] Later notes by the same psychologist dated January 24, 2018 state as follows: "Due to patient's symptoms and history of being single-

8

celled, the patient struggles excessively w/stressful dormitory living environment. [Doc. No. 1, at p. 96.] ***The Complaint acknowledges that these treatment notes and a later note contain an error as they indicate plaintiff was placed in dormitory housing at RJD, but he was in "cell housing" at RJD even though he had been cleared for dormitory living. When he was transferred from RJD to SATF, plaintiff was briefly placed in a dormitory setting but promptly evaluated and transferred to alternative housing.*** [Doc. No. 1, at pp. 15, 89, 96.] In early 2018, plaintiff was transferred from SATF to the California Health Care Facility ("CHCF") in Stockton, California, where he is currently housed, and CHCF notes indicate plaintiff wishes to stay at this facility. [Doc. No. 1, at p. 15, referring to p. 96-97.]

## *Discussion*

### *I. Motion to Dismiss Standards.*

A plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A motion to dismiss under Federal Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside*, 534 F.3d at 1121. A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether the plaintiff has alleged enough facts to state a claim, a District Court may consider "material which is properly submitted as part of the complaint," such as an attached exhibit. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989).

When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). However, it is not necessary for the Court "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[T]hreadbare recitals" of the elements of a cause of action, "supported by mere conclusory statements," are not enough. *Ashcroft v. Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

On the other hand, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . .'" *Erickson v. Pardus*, 551 U.S. at 94. Particularly in civil rights cases, courts have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

## II. *Eighth Amendment/Deliberate Indifference Standards.*

To prevail on a claim for violation of constitutional rights under Title 42, United States Code, Section 1983, a plaintiff must prove two elements: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege or immunity conferred by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000).

"The Constitution "does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Eighth Amendment does require prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotations omitted).

Two requirements must be met to establish a violation of the Eighth Amendment. "First, the deprivation alleged must be, objectively, sufficiently serious. *Id.* at 34. (internal quotations omitted). In other words, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotations omitted). If a failure to prevent harm is alleged, a prisoner must show "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

Second, a prison official must have a "sufficiently culpable state of mind" to violate the Eighth Amendment. "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. If prison officials knew of a substantial risk to an inmate's health or safety, those officials would be "free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at p. 844. In short, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." *Id.*

## II. *Deliberate Indifference Claims re Dormitory Housing Clearance.*

In their Motion to Dismiss, defendants argue that the District Court should dismiss plaintiff's Eighth Amendment claims alleging prison officials at RJD were deliberately indifferent when they cleared plaintiff for dormitory housing, because these claims are not objectively serious enough to constitute constitutional violations. [Doc. No. 22-1, at pp. 18, 29.] In defendants' view, housing changes are a normal part of prison life, and inmates can expect many housing changes during incarceration to accommodate the prison system. Although prisoners cannot simply demand to be excluded from certain types of housing, they have "many avenues" to challenge housing change recommendations, and, like everyone else, "are subject to bureaucratic processes." [Doc.

11

No. 22-1, at p. 18.] Defendants contend that plaintiff administratively challenged the Classification Committee's decisions, and he was not transferred to dormitory housing even though the Classification Committee cleared him for this type of housing on November 30, 2016 and November 1, 2017. Instead, as indicated in the Complaint, plaintiff received a reversal or an abatement of these decisions, and he remained in cell housing while at RJD. [Doc. No. 22-1, at pp. 16-17, 20.] In his Opposition to defendants' Motion to Dismiss, plaintiff "stands on the veracity and merit of the Complaint," and requests that the Court deny defendants' Motion. [Doc. No. 29, at p. 3.]

A review of the Complaint indicates plaintiff alleges deliberate indifference against the following defendants at RJD in connection with the recommendations for dormitory housing clearance: (1) members and/or attendees of the November 30, 2016 Classification Committee hearing (*i.e.*, defendants Searles (formerly Sanchez) and Vogel), (2) members and/or attendees of the November 1, 2017 Classification Committee hearing (*i.e.*, defendants York and Searles) [Doc. No. 1, at pp. 5-6, 9-13, 38, 83]; (3) defendant Williams [Doc. No. 1, at pp. 5, 7, 50-51]; (4) defendant Paramo (warden) [Doc. No. 1, at pp. 6-9, 12-13, 47, 48, 56-57]; (5) defendant K. Rodriguez, staff psychologist [Doc. No. 1, at pp. 9-11, 60, 63]; and defendant Bahro, M.D. [Doc. No. 1, at pp. 9, 61.]

"Double-celling" and other housing assignments do not violate the Eighth Amendment unless they lead to the unnecessary infliction of pain; a deprivation of "essential food, medical care, or sanitation;" or the creation of "other conditions intolerable for prison confinement," such as an increase in violence among inmates. *Rhodes v. Chapman*, 452 U.S. 337, 348-350 (1981). Here, plaintiff has not alleged a deprivation of his basic needs, such as adequate food, clothing, shelter, sanitation, or basic medical care. Nor does he allege that he suffered any pain, illness, or physical injury. Rather, the gravamen of plaintiff's deliberate indifference claims seems to be that RJD officials ignored the dormitory housing exclusion by Mule Creek's physicians, which allegedly lead to a substantial risk of harm to plaintiff's health and safety.

12

When a prison official ignores the instructions of a prisoner's treating physician, it may constitute deliberate indifference to the prisoner's medical needs. *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999). For example, the plaintiff in *Wakefield* alleged that his treating physician regularly prescribed a medication to manage his mental disorder and prevent violent outbursts. Shortly before his release from prison, plaintiff's treating physician gave him a prescription for a two-week supply of his medication to be dispensed to him upon his release from prison, so he would have time to get to another prescribing doctor. On the day plaintiff was released, he asked the prison official who was handling his discharge for his medication, but the official was "too busy" and refused to give plaintiff the medication or even call the medical staff to check on the prescription. As a result, plaintiff suffered a relapse of his condition which lead to serious consequences. *Id.* at 1162. The Ninth Circuit held that the plaintiff's allegations stated a claim under the Eighth Amendment for deliberate indifference to his serious medical needs. *Id.* at 1164-1165.

Here, the allegations in plaintiff's Complaint, combined with the exhibits attached thereto, clearly show that members of the Classification Committees and defendant K. Rodriguez only made recommendations to clear plaintiff for dormitory housing and their recommendations were never carried out. Rather, following the first Classification Committee hearing on November 30, 2016, plaintiff remained in cell housing at RJD. As defendant Paramo (warden) stated in correspondence to plaintiff dated December 28, 2016, which plaintiff allegedly received on January 9, 2017: Classification Committees only make recommendations; plaintiff would not be transferred; plaintiff's case was "under review;" any final determination about plaintiff's housing would be made by other officials; and plaintiff would be referred to Mental Health for a further evaluation. [Doc. No. 1, at pp. 9, 55-57.] Plaintiff was also advised as follows in an April 20, 2017 response to his March 4, 2017 CDCR 22 request: "Your case was finalized and ***you will not be referred for transfer at this time***. No auditor action took place." [Doc. No. 1, at p. 59 (emphasis added).]

13

Following the second Classification Committee hearing on November 1, 2017, despite the "cleared for dormitory housing" recommendation by members of the Classification Committee and defendant K. Rodriguez, plaintiff again remained in cell housing at RJD until he was transferred to another facility in early 2018. As noted above, the November 1, 2017 Classification Committee also recommended transfer to another facility in Northern California to address plaintiff's concerns about dormitory housing and other factors, such as his medical condition. [Doc. No. 1, at p. 84.] Once again addressing plaintiff's concerns about dormitory housing, defendant Paramo (warden) sent another letter to plaintiff dated December 22, 2017, in which he repeated that Classification Committees only make recommendations and final decisions about his housing would be made based on many factors and would need to be approved by a Classification Staff Representative before any transfer could be made. [Doc. No. 1, at p. 102.] In addition, plaintiff has stated in the Complaint that he remained in cell housing at RJD even though he had been cleared by the Classification Committee for dormitory housing. [Doc. No. 1, at pp. 15, 96.] Then, following his transfer from RJD to two other facilities, plaintiff's housing needs were promptly re-evaluated and addressed by officials at those facilities. [Doc. No. 1, at pp. 15-16, 96-101.]

In sum, the recommendations to clear plaintiff for dormitory housing that were made in connection with the Classification Committee hearings on November 30, 2016 and November 1, 2017 were simply not carried out. Consequently, there is nothing to indicate these recommendations, or the involvement of any of the other defendants named in connection with these recommendations, resulted in any unreasonable risk to plaintiff's health or safety.

With respect to the recommendations of defendant K. Rodriguez, in her capacity as a staff psychologist at RJD, there is an additional reason why plaintiff's allegations against her do not state a claim for deliberate indifference. The allegations in the Complaint indicate defendant K. Rodriguez is a mental health professional. "[A] plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need

14

18cv2101-BAS(KSC)

to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference. In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law. [Citation omitted.] To prevail under these principles, [the plaintiff] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, [citations omitted], and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health. [Citation omitted.]" *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Based on her evaluation, which included a review of plaintiff's history since incarceration, defendant K. Rodriguez, staff psychologist, concluded there was "no reason for a dormitory housing exclusion." [Doc. No. 1, at p. 83.] Defendant K. Rodriguez did, however, determine plaintiff should be scheduled for another evaluation "to determine the need for placement into the CCCMS program as a result of his PTSD and occasional panic attacks." [Doc. No. 1, at p. 83.] Plaintiff has not alleged any facts suggesting her recommendations were medically unacceptable based on the circumstances at RJD, which may have been quite different from those at Mule Creek. Accordingly, without more, her recommendations, at most, constitute a difference of opinion with the recommendations of the Mule Creek mental health professionals, and the allegations against her are therefore not enough to state a claim for deliberate indifference to a serious medical need.

Under the circumstances presented, it is RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss plaintiff's Eighth Amendment claims of deliberate indifference to his health and safety. In this Court's view, plaintiff's allegations, combined with the documentary evidence attached to the Complaint, are not enough to state a claim for deliberate indifference to plaintiff's health and safety against the defendants, including defendant Searles (formerly Sanchez); Vogel; York; Paramo; K. Rodriguez; and Bahro, M.D.

15

### III. *Allegations re Plaintiff's Administrative Requests and Grievances.*

The allegations against the remaining defendants appear to be that they mishandled or ignored plaintiff's administrative grievances and requests. For example, the Complaint alleges that defendant York intentionally caused plaintiff injury, because he failed to provide him with the documentation he requested and needed to perfect his appeal in the administrative grievance process. [Doc. No. 1, at p. 10, 58-66.] The defendants named in these administrative process allegations in the Complaint include Williams, York, Paramo, Searles (formerly Sanchez), Bahro, (a psychologist), [Doc. No. 1, at pp. 3, 5, 6-7, 10-13, 47- 48 50, 52, 56-58, 61-62, 73-74, 77-79, 80, 82.] In addition, the Complaint includes a single allegation against defendant Villituerle (correctly spelled, Villafuerte), a supervisor, who responded to one of plaintiff's CDCR 22 requests "informing plaintiff that his 'concerns have been addressed regarding this form 22.'" [Doc. No. 1, at p. 2, 10, 67.] The Complaint also names two appeals coordinators, Olivarria and Self, but specific allegations against these defendants could not found in the Complaint. [Doc. No. 1, at p. 3.] In sum, it appears plaintiff seeks to implicate these defendants solely because of their involvement in the administrative grievance process.

In their Motion to Dismiss, defendants argue that plaintiff's due process and deliberate indifference allegations against the defendants should be dismissed for at least two reasons. First, there is no constitutional right to a prison administrative grievance system, and, in any event, plaintiff received all the process he was due. Second, there are no allegations indicating the named defendants knew about but disregarded a substantial risk to plaintiff's health or safety. Defendants contend they would not have had a basis or reason to take any action to change the Classification Committee's recommendations to clear plaintiff for dormitory housing. [Doc. No. 22-1, at p. 22-24.]

"There is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. [Citation omitted.] Such protections include the

rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Serrano v. Francis*, 345 F.3d 1071, 1077–78 (9th Cir. 2003).

Here, plaintiff's allegations do not involve disciplinary violations. *See also, Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (stating that administrative grievance regulations do not create a liberty interest in access to that procedure; grievance procedures do "not confer any substantive right upon the inmates" requiring procedural due process protections guaranteed by the Fourteenth Amendment). In other words, without more, any failure by defendants to provide plaintiff with due process protections in connection with his administrative grievances or requests at RJD is not actionable under Section 1983.

On the other hand, it is possible for an inmate to state a claim for deliberate indifference against a prison administrator, such as an appeals coordinator, if the plaintiff specifically alleges facts indicating there was an ongoing constitutional violation, such as a painful bone fracture that was not being treated, and the administrator had the authority and opportunity to act to prevent the violation but failed to do so. *See, e.g., Jett v. Penner*, 439 F.3d 1091, 1045 (9th Cir. 2006); *Henderson v. Muniz*, 196 F. Supp. 3d 1092, 1104–1105 (N.D. Cal. 2016).

Here, there are allegations suggesting some defendants may have been negligent in processing a few of plaintiff's requests and/or grievances while he was challenging the housing recommendations made by the Classification Committees on November 30, 2016 and November 1, 2017. However, acts of negligence or inadvertence are not enough to state a claim for deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are no allegations against any of the defendants involved in the administrative grievance process indicating they were aware of any ongoing constitutional violation against plaintiff that would have required some action on their part to prevent a constitutional violation from continuing. In other words, plaintiff has not alleged enough facts to state a claim for deliberate indifference to his health or safety in connection with

17

the grievances and requests he submitted to challenge the housing recommendations of the November 30, 2016 and November 17, 2017 Classification Committees. Therefore, under the circumstances presented, it is RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss plaintiff's allegations against defendants Williams, York, Paramo, Searles (formerly Sanchez), Bahro, Villituerle (correctly spelled, Villafuerte), Olivarria, and Self for their alleged involvement in processing any of plaintiff's administrative requests or grievances concerning his request to be medically excluded from dormitory housing.

### IV. *Leave to Amend.*

"[A] district court should grant should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995) (internal quotation marks omitted). The "rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant. Presumably unskilled in the law, the *pro se* litigant is far more prone to making errors in pleadings than the person who benefits from the representation of counsel." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (internal quotation marks omitted). Although unlikely, it is possible plaintiff might cure the defects in his Complaint by alleging additional facts. It is therefore RECOMMENDED that the District Court GRANT plaintiff **_thirty (30) days'_** leave to amend his Complaint.

### V. *Qualified Immunity.*

Defendants argues they are entitled to qualified immunity from suit because the allegations in the Complaint, along with the documentary evidence attached to the Complaint, show they acted in an objectively reasonable manner based on a belief their conduct was lawful. In their arguments, defendants emphasize the importance of resolving immunity questions at the earliest possible stage in litigation to avoid the costs and expenses of litigation. [Doc. No. 22-1, at pp. 24-28.]

Qualified immunity shields government officials performing discretionary functions from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638B640 (1987). As outlined above, this Court has concluded plaintiff failed to state claims against any of the defendants and has recommended granting defendants' Motion to Dismiss as to all defendants with leave to amend. Because it appears possible for plaintiff to amend the Complaint to state viable claims against the named defendants and because there is a policy favoring liberal amendment, the Court is unable to conclude definitively at this time whether defendants are entitled to qualified immunity. Under these circumstances, it is RECOMMENDED that the District Court DENY defendants' Motion to Dismiss on qualified immunity grounds WITHOUT PREJUDICE. Defendants should be permitted to renew their request for dismissal on qualified immunity grounds in a summary judgment motion or in another motion to dismiss if plaintiff amends the Complaint.

### *Conclusion*

Having reviewed defendants' Motion to Dismiss, the undersigned Magistrate Judge submits this Report and Recommendation to the United States District Judge assigned to this case pursuant to Title 28, United States Code, Section 636(b)(1). For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss as to all named defendants and causes of action with *thirty (30) days'* leave to amend.

IT IS HEREBY ORDERED that *no later than December 2, 2019* any party to this action may file written objections with the District Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the District Court and served on all parties *no later than December 16, 2019*. The parties are

///

///

advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: November 5, 2019

Hon. Karen S. Crawford
United States Magistrate Judge